BARNES, J.,
for the Court:
¶ 1.' In 1990, Audie Belle English, along with' three of her relatives; purchased a $75,000 certificate of deposit (CD) from Sunburst Bank in Laurel, Mississippi. The CD’s terms noted that the CD would automatically renew every' six months at the bank’s prevailing rate of interest at the time of renewal. Any of the CD holders could cash out the CD without permission from the others, as long as the original certificate of' deposit was presented to the bank. Almost twenty years after the CD’s issuance, the last remaining CD holder, Audie Belle, presented the original certificate for redemption at the bank, now titled Regions Bank.[1] However, because Regions could not locate any records relating to the CD, it refused to redeem the CD, concluding that the CD must have already been cashed out.
¶ 2. English passed away a short time later, and her daughter-in-law and executrix, Elizabeth June English, sued Regions on behalf of Audie Belle’s estate, seeking payment of the CD plus interest. After a hearing on the matter, the Jones County Chancery Court granted summary judgment in favor of Regions. Elizabeth now appeals.
¶ 3. Finding that Regions is not entitled to a judgment, as a matter of law, we reverse the, judgment and remand for fur *984 ther proceedings consistent with this opinion.
STATEMENT OF FACTS
¶4. On October 26, 1990, Audie Belle (referred to on the CD as Mrs. Dillard English), Helen Masters, Denton English, and Lindsey English purchased a $75,000 CD from Sunburst Bank. The CD was issued for a six-month term and reached maturity on April 24, 1991. According to its terms, upon maturity the CD would be payable to “Mrs. Dillard English or Helen Masters or Denton English or Lindsey English or any of them or the survivor.” (Emphasis added). Thus, the CD could be redeemed by one or more persons without the others’ knowledge or permission. Pursuant to the terms printed on the front of the CD, redemption was proper “upon presentation and surrender of this Certificate properly endorsed at said bank....” However, a lost-CD policy existed throughout the relevant time period under which the CD holders could request a re-issuance of the original certificate. The terms of the CD also stated that interest would accrue and be paid monthly into a designated credit-checking account at the rate of 7.20% until April 24, 1991, the original date of maturity. After that date, the CD was to automatically renew every six months at the bank’s prevailing rate of interest at the time of each renewal.
¶ 5. In June 2008, Audie Belle, the last surviving member of the CD’s payees, presented the original certificate for redemption at the issuing bank, now owned by Regions. Regions could not identify any bank records related to the CD, other than the original certificate presented by Audie Belle. At the time, Regions employed a closed-records retention policy of six years — three years longer than minimum required by banking regulations. Hence, Regions refused to the redeem the CD, presuming that because no records existed, the CD must have been previously redeemed.
¶6. Shortly thereafter, Audie Belle died, and Elizabeth, her executrix, filed a complaint against Regions on behalf of Audie Belle’s estate on May 4, 2010. The complaint asserted a breach-of-contract claim and sought damages in the amount of $75,000 (the face value of the CD) and $247,962 for accumulated interest during the CD’s lifetime. The interest was calculated based on the bank’s initial prevailing interest rate of 7.20% cited on the original CD.
¶7. Regions requested Audie Belle’s tax records from 1990 to the present. However, the only tax records submitted were a 2007 federal tax record and a 1991 IRS record. The 1991 IRS record reflected that monthly interest payments from the CD in question were paid to Audie Belle in the amount of $4,533.91, but the 2007 tax record did not indicate any CD interest paid to Audie Belle from any bank.
¶8. Both Elizabeth and Regions filed motions for summary judgment. After a hearing on the motions, the chancellor found Regions’s argument — that the absence of any bank records regarding the CD created a legal presumption of payment — to be persuasive and granted Regions’s motion for summary judgment based on its affirmative defenses of laches, payment, and statute of limitations.
119. Elizabeth now challenges the chancellor’s ruling on appeal, arguing that Regions failed to put forth any evidence in support of its affirmative defenses. Finding that Regions provided no direct evidence that the CD had been previously redeemed by another owner and, therefore, is not entitled to a judgment as a matter of law, we reverse the judgment *985 and remand for further proceedings consistent with this opinion.
DISCUSSION
¶ 10. The Mississippi Supreme Court has held that an appellate court’s review “of a. trial court’s grant of a summary judgment motion is de novo.” Stuckey v. The Provident Bank, 912 So.2d 859, 864 (¶ 8) (Miss.2005) (citing Miller v. Meeks, 762 So.2d 302, 304 (¶ 3) (Miss.2000)). Summary judgment is proper when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56. “[¿judgments as a matter of law present both the trial court and the appellate court with the same question — whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact hás been obviated.” White v. Stewman, 932 So.2d 27, 32 (¶ 11) (Miss.2006).
In this way, summary judgment roots out mere accusation and conjecture in favor of merit and ultimately functions to force a non-movant to present some modicum of material evidence. While summary judgment is not a substitute for the trial of disputed fact issues, it is an effective rule of - procedure which forces parties to produce evidence sufficient to convince a trial court that a genuine issue of material fact exists.
Stuckey, 912 So.2d at 866 (¶ 12) (citation omitted).
¶ 11. Although English was the initial movant for summary judgment, Regions also filed a separate motion for summary judgment. Upon review, we find English provided the chancery court with sufficient evidence of a genuine issue of material fact as to whether the CD had been redeemed. Specifically, she provided evidence that the original CD, which stated that redemption was proper “upon presentation and surrender of this Certificate properly endorsed at said bank,” was still in Audie Belle’s possession. English did not “rest upon mere allegations, but ... set forth specific facts showing that there is a triable issue.” See M.R.C.P. 56(e). The Mississippi Supreme Court has held:
An issue of fact may be present where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted evidentiary facts; or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge'eannot say with reasonable confidence that the full facts of the matter have been disclosed.
Am. Legion Ladnier Post No. 42 Inc. v. City of Ocean Springs, 562 So.2d 103, 106 (Miss.1990) (citation omitted). English, as the “party opposing summary judgment!,] is entitled to all reasonable inferences from the evidence.” See Mayer v. Angus, 83 So.3d 444, 449 (¶ 12) (Miss.Ct.App.2012) (citing Rhaly v. Waste Mgmt. of Miss. Inc., 43 So.3d 509, 516 (¶ 22) (Miss.Ct.App.2010)).
¶ 12. Regions, on the other hand, submitted no direct proof that the CD had been cashed out by another owner. Rather, it claimed in its interrogatory responses that “the absence of any information concerning this [CD] demonstrates that it was previously redeemed by one of its owners.” (Emphasis added).[2] In its motion for summary judgment, Regions cited
*986 Krawitt v. Keybank, 23 Misc.3d 297, 871 N.Y.S.2d 842, 844 (Sup.Ct.2008), which recognized that New York has “a legal presumption of payment after the lapse of twenty years between .the right to enforce an- obligation ■ and an attempt to do so.” That case held:
“The presumption of payment from a great lapse of time is founded upon the rational ground that a person naturally desires to possess- and enjoy his own, and that an unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself.” Bean v. Tonnele, 49 Sickels 381, 386, 94 N.Y 381 (1884).
To rebut the presumption, clear and convincing evidence of nonpayment is required (see Bean, at 385—86; Boscowitz v. Chase Nat. Bank, 202 Misc. 1016, 1019-20, 111 N.YS.2d 147 [(1952)]). An inference of payment may be found to apply where the lapse of time is less than twenty years, and, depending upon other circumstances of the case, an inference may constitute conclusive proof of payment (Oneida National Bank & Trust Co. v. Kranz, 70 Misc.2d 595, 598, 334 N.Y.S.2d 336 [1972]; Katzman [v. Citibank, 2007 WL 2325857 (N.D.N.Y.[2007]) ]. Other circumstances which may support an inference of payment include the strength of any other evidence tending to support payment, and the overall length of time passed (see id.).
Id. The chancellor found this “reasoning in Krawitt to be persuasive,” and granted summary judgment for Regions.
¶ 13. However, Mississippi has no such long-standing legal presumption of payment under these circumstances.[3] Furthermore, Katzman, one of the cases cited "in Krawitt, was reversed- by the United States Court of Appeals for the Second Circuit and closely mirrors the facts presented in this case. Katzman involved a widow, Eva Katzman,' who brought a breach-of-eontract action against Citibank seeking -payment of -a twenty-year-old CD issued to her late husband. Katzman v. Citibank, 298 Fed.Appx. 81, 82 (2d Cir.2008). One of the CD’s terms and conditions' stated the CD must be surrendered to withdraw the funds on or before the maturity daté'. Id. The lower court granted of summary judgment in favor of the bank due to the long lapse of time since the CD’s issuance. Katzman, 2007 WL 2325857, at *4. The Second Circuit, however, reversed and remanded, concluding:
Although Citibank presented competent evidence ,including its policies and procedures for .record retention, that, “if a Citibank customer who is identified by an officer or employee of a branch came to the branch without a Savings Certificate, the Savings Certificate would have been paid to the customer and the appropriate notation made on the account,” that evidence was inconclusive because it was directly contradicted by the express language of Citibank’s CD stating that, in order to withdraw the entire balance, the CD must be surrendered to Citibank. Absent explicit evidence that Katzman’s CD was- paid to her husband or her in the way described by the operations manager, this conflicting evidence-of Citibank’s own making concerning the way Citibank pays its CDs creates a genuine issue of material fact. Weighing that evidence is not the function of the court as it considers the sutnmary judgment motion.
Although Katzman’s only record evidence was, in essence, the CD itself, it *987 was Citibank’s burden to demonstrate that no genuine issues of- material fact existed with respect to .that CD,- the authenticity of which-.does not appear to be disputed by Citibank. In light of the CD’s express language that-the CD had to be surrendered to- Citibank in order to withdraw the entire balance, Citibank’s statement that “such was not necessarily -the case” does not establish conclusively that the relevant account had been paid out; rather, it creates a genuine issue of material fact- entitling Katzman to have a jury decide how much weight, if any,- to give to that evidence and what inferences, if any, to draw from that evidence, at trial.
Katzman, 298 Fed.Appx. at 83-84 (emphasis added).
¶ 14. Similarly, we find Regions’s failure to furnish any direct evidence as to Where the proceeds went and who had received them, combined with the evidence that Audie Belle had never surrendered the original CD, created a genuine issue of material fact for the chancery court’ to consider and was not an issue that entitled Regions to a judgment as a matter of law.
¶ 15. Accordingly,- we reverse the chancery court’s judgment and remand for further proceedings. As the chancery court did not make any findings of fact regarding the .merits-of English’s claims, we: do: not address the merits of English’s various arguments on appeal. See Richardson v. Norfolk S. Ry. Co., 923 So.2d 1002, 1007 (¶ 9) (Miss.2006) (In reviewing a ruling on a Rule 56 motion, an appellate court “must only determine if there are issues to be tried; we need not actually try. those issues.”) (citation omitted).
¶ 16. ’ ' Recognizing that the chancellor, on remand as finder of fact, might very well determine that the CD was redeemed without the presentation of the original certificate by Audie Belle and, thereby, achieve the same result, one might argue that’ our disposition of this case is “much ado about nothing.”[4] The Mississippi Supreme Court, however, has indicated that Rule 56 of the Mississippi Rules of Civil Procedure must be construed the same in chancery court as in circuit court. Dennis v. Searle, 457 So.2d 941, 944 (Miss.1984) (overruled on other grounds).[5] As discussed, Regions never provided any direct proof that the CD proceeds were paid to any of the other owners of the CD. In its order granting Regions’s motion for summary judgment, the chancery court stated: “There were four owners that could have redeemed [the CD]. at any time without the others, knowing.” (Emphasis added). The dissent by Judge Ishee is also unable to state with any confidence what occurred to the CD proceeds, commenting: “Any of the other CD holders could have previously redeemed the CD in question without Audie Belle’s consent or the original certificate, according to Ravenstein. Altema-tiv'ely, one of the other CD holders could have employed Régions’s lost-CD policy and had an original-certificate re-issued.” (Emphasis added). Thus,’- the evidence here was not “so indisputable, or so deficient, that the necessity of a trier of fact [was] obviated.” White, 932 So.2d at 32 *988 (¶ 11). Regions is not entitled to a judgment as a matter of law.
¶ 17. Addressing Regions’s motion to strike portions of English’s reply brief, as the information that Regions requests be stricken was not relied on by this Court in our analysis and determination, we dismiss the motion as moot.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING, P.J., CARLTON, FAIR AND JAMES, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., MAXWELL AND WILSON, JJ. WILSON, J„ DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND MAXWELL, J.; ISHEE, J., JOINS IN PART.

. Between the time of the CD's issuance in 1990 and Audie Belle’s attempt to redeem the CD in 2008, Sunburst Bank had merged with and been acquired by several other banking institutions. It now operated as Regions Bank.

. This absence of information referred to by Regions is the lack of any Internal Revenue Service Form 1099 reporting interest to the CD holder.

. Krawitt is also factually-distinguishable in that the person attempting to redeem- the CD was not one of the original CD purchasers, as is the case here.

. William Shakespeare, "Much Ado about Nothing."

. See also Jeffrey Jackson, 13 Encyclopedia of Mississippi Law § 13:183 (2014) (stating that the supreme court has advised that a chancery court should use "great care and caution” in granting summary judgments "when a hearing on the merits can in all likelihood be heard as expeditiously as the time consumed in applying for, resisting and ruling upon a motion for summary judgment.” (quoting McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1036 (Miss.1990)))..