IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0913

_____

FILED
**June 15, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WESBANCO BANK, INC.,
Petitioner,

v.

CRYSTAL GAYLE ELLIFRITZ,
Respondent.

_____

Appeal from the Circuit Court of Monongalia County
The Honorable Phillip D. Gaujot, Judge
Case No. 19-C-87

AFFIRMED
_____

Submitted: February 7, 2023
Filed: June 15, 2023

James C. Gardill, Esq.
PHILLIPS GARDILL KAISER &
ALTMEYER PLLC
Wheeling, West Virginia
and
James A. Walls, Esq.
Morgantown, West Virginia
Joseph A. Ford, Esq.
Charleston, West Virginia
SPILLMAN THOMAS & BATTLE, PLLC
Counsel for Petitioner
Wesbanco Bank, Inc.

Frank E. Simmerman, Jr, Esq.
Chad L. Taylor, Esq.
Frank E. Simmerman, III, Esq.
SIMMERMAN LAW OFFICE, PLLC
Clarksburg, West Virginia
Counsel for Respondent Crystal Gayle
Ellifritz

Sandra M. Murphy, Esq.
Thomas A. Heywood, Esq.
J. Mark Adkins, Esq.
Peter G. Markham, Esq.
BOWLES RICE LLP
Charleston, West Virginia

Counsel for Amici Curiae Community Bankers of West Virginia and the West Virginia Bankers Association

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE WALKER and JUSTICE HUTCHISON concur and reserve the right to file separate opinions.

JUSTICE BUNN dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the West Virginia Rules of Civil Procedure [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented.  Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below.  Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party."  Syl. Pt. 2, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009).

2.      "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion.  By contrast, the question of whether a jury was properly instructed is a question of law and the review is *de novo*."  Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

3.      "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense."  Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

i

4.    "'The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.' Syllabus Point 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995)." Syl. Pt. 3, *Keesee v. Gen. Refuse Serv., Inc.*, 216 W. Va. 199, 604 S.E.2d 449 (2004).

5.    "'""An instruction should not be given when there is no evidence tending to prove the theory upon which the instruction is based." Syl. pt. 4, *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, [165] W.Va. [689], 271 S.E.2d 335 (1980).' Syllabus point 3, *Jenrett v. Smith*, 173 W.Va. 325, 315 S.E.2d 583 (1983)." Syl. Pt. 4, *Maples v. W. Va. Dep't of Com.*, 197 W. Va. 318, 475 S.E.2d 410 (1996).

6.    "'This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court.' Syl. pt. 4, *Wheeling Downs Racing Association v. West Virginia Sportservice, Inc.*, 157 W.Va. 93, 199 S.E.2d 308 (1973)." Syl. Pt. 3, *Dean v. W. Va. Dep't of Motor Vehicles*, 195 W. Va. 70, 464 S.E.2d 589 (1995).

WOOTON, Justice:

In 2018 Respondent Crystal Gayle Ellifritz ("Ms. Ellifrtiz") presented to WesBanco Bank, Inc. ("WesBanco" or "the bank") and demanded payment of an original, unendorsed money market certificate of deposit ("certificate of deposit," "CD," or "certificate") originally issued in 1980 by Central National Bank and payable to either Ms. Ellifritz or her father.[1] The Petitioner WesBanco, successor in interest to Central National Bank, denied payment after determining there was no existing account associated with the certificate, or with Ms. Ellifritz or her father. Thereafter, Ms. Ellifritz filed suit in the Circuit Court of Monongalia County, including among several claims an allegation that WesBanco breached its contract by refusing to tender payment upon her presentation of the original certificate. The matter proceeded to trial. At the conclusion of the evidence WesBanco moved for judgment as a matter of law, contending that Ms. Ellifritz had failed to establish the existence of a contract. WesBanco argued that the absence of account records resulted in a presumption that the funds in the account had been disbursed to either Ms. Ellifritz or her father. The circuit court denied the motion and submitted the matter to the jury. The jury charge did not include two instructions requested by WesBanco. The jury found for Ms. Ellifritz and awarded her damages. WesBanco now appeals.

---

[1] The Court would like to acknowledge the participation in this case of the Bankers of West Virginia and the West Virginia Bankers Association who filed a joint amicus brief in support of WesBanco. We have considered the arguments presented by the amici curiae in deciding this case.

1

Upon review of the briefs, the appendix record, the applicable law and the arguments of the parties, we conclude that the circuit court did not err in denying WesBanco's motion for judgment as a matter of law. Likewise, we conclude that the circuit court did not err in refusing the two proffered jury instructions. Finally, we conclude that the filing of this matter was not barred by the applicable statute of limitations, as contended by WesBanco. Accordingly, we affirm the order of the circuit court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 31, 1980, Ms. Ellifritz's father, Dewey Ellifritz, deposited $10,000 in a money market time deposit account[2] at Central National Bank, made payable to either Dewey Ellifritz or Ms. Ellifritz. The account had a twenty-six-week term with an initial interest rate of 14.282% and an initial maturity date of July 1, 1981. If unredeemed at the maturity date the account automatically renewed for successive twenty-six-week terms at the "then prevailing U.S. Treasury bill rate." Central National Bank issued a certificate of deposit for the account which conspicuously stated on its face that the account was payable "IN CURRENT FUNDS 26 WEEKS AFTER DUE DATE, ON THE RETURN OF THIS CERTIFICATE PROPERLY ENDORSED[.]" The parties both agree that this is generally referred to in the banking industry as a "presentation clause" or

---

[2] According to the certificate of deposit, the account was designated No. 5249.

"surrender clause." On the back of the certificate is a release to be signed upon redemption, as well as a list of named "Terms and Conditions" which includes the following statement:

> JOINT CERTIFICATES: When two or more persons are named as depositors on this Certificate with the conjunction "or" appearing between names, then such Certificate shall be payable to any or the survivor or survivors of them and payment may be made upon surrender of this Certificate to any of them during the lifetime of all, or to any survivor or survivors after the death of one or more of them. When the conjunction "and" appears between names, the Certificate shall be payable only upon the signatures of all depositors named.

Through two mergers, one in 1994 and one in 2000, Central National Bank became a part of WesBanco.[3] WesBanco, as the surviving entity, acquired all of the merging entities' open accounts, including all funded time deposit accounts such as the certificate of deposit at issue herein. The record indicates that WesBanco uses two separate electronic recordkeeping systems: its core system, Bankway; and its document management system, IS-View. Searching these two systems using a person's name or social security number generates a list of all active accounts at WesBanco associated with that person; the results also show every account associated with that person that has closed since the year 2000.[4] Put simply, WesBanco states that if an account was open at WesBanco as of the year 2000, or closed thereafter, it would appear in one or both of these

---

[3] In 1994 Central National Bank merged into WesBanco Bank Fairmont, Inc.; and in 2000, WesBanco Fairmont merged into WesBanco Bank Wheeling, Inc.

[4] It is undisputed that WesBanco digitized its account records as of the year 2000 and continues to maintain those digital records.

systems. Any account which was closed prior to 2000 would not appear in the digitized records.

In December 2018, following the death of her father, Ms. Ellifritz found the original certificate of deposit in his safe. She presented the certificate to her local WesBanco branch and demanded payment. WesBanco performed a search of its recordkeeping systems and was unable to locate any record of an account—either active or closed—associated with the certificate, or with Ms. Ellifritz or her father's identifying information. As a result, WesBanco concluded that the account closed prior to the year 2000, informed Ms. Ellifritz there was nothing to redeem, and denied payment.

Thereafter, in April 2019, Ms. Ellifritz filed suit against WesBanco in the Circuit Court of Monongalia County alleging breach of contract, unjust enrichment, and constructive fraud,[5] as well as a claim for punitive damages.[6] Ms. Ellifritz alleged in

---

[5] Ms. Ellifritz's constructive fraud claim was predicated on a statement allegedly made to her by a teller at her local WesBanco branch that this money market account had escheated to the State. She contended this was an intentional misrepresentation based on WesBanco's corporate representative's later testimony that the bank investigated—both internally and with the State Treasurer—whether the funds had escheated and determined conclusively that they had not. As explained below, the circuit court granted WesBanco's motion for judgment as a matter of law on this claim.

[6] The unjust enrichment and constructive fraud claims were dismissed pursuant to WesBanco's successful motion for judgment as a matter of law at the close of Ms. Ellifritz's case-in-chief. *See* W Va. R. Civ. P. 50(a) (providing that a court may grant such motion "with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue."). The punitive damages claim was dismissed pursuant to WesBanco's renewed motion for judgment as a matter of

4

support of her breach of contract claim that the certificate of deposit constituted an enforceable contract, and WesBanco breached the presentation clause of that contract by failing to tender payment upon presentation of the original certificate.

WesBanco moved to dismiss the breach of contract claim, arguing that: (1) Ms. Ellifritz was unable to demonstrate the existence of an enforceable contract; (2) the absence of records relating to the account created a presumption that either Ms. Ellifritz or her father had closed the account; and (3) the claim was barred by the statute of limitations. The circuit court denied the motion in January 2021, and the matter proceeded to trial in March of that year.

At trial Ms. Ellifritz contended that the presentation clause on the face of the certificate constituted a binding contractual term requiring WesBanco to remit payment to her upon presentation of the certificate and her demand for payment. She argued that WesBanco had no evidence to support its contention that it had properly paid the funds to a co-depositor (e.g., Dewey Ellifritz) at an earlier time without presentation of the certificate. WesBanco, in response, contended that (1) the presentation clause did not create a substantive right upon which Ms. Ellifritz could recover; and (2) any records of payment

---

law at the close of all evidence. *See id.* Therefore, the breach of contract claim was the only claim presented to the jury.

to a co-depositor would have been properly destroyed pursuant to state laws governing the retention of banking records.[7]

In support of their respective arguments, Ms. Ellifritz presented the original certificate of deposit and testified that her father kept the certificate in its original cover in the family safe from the time he made the initial deposit in 1980 until the time of his death. She explained that she came into possession of the certificate after his death, when she found it in the safe.

WesBanco presented the testimony of four witnesses: Theresa Barry, a research clerk in WesBanco's Wheeling office; Norma Fisher, an administrative assistant in the same office; Joan Miller, WesBanco's corporate representative;[8] and William Buchanan, WesBanco's Vice President and Manager of Bank Operations. Ms. Barry and Ms. Fisher each testified that they personally performed searches of WesBanco's electronic file systems and could locate no information related to this account or to either of the Ellifritzes. Mr. Buchanan testified to the contents of the certificate, specifically testifying to the manner in which WesBanco handles time deposit accounts (i.e., mailing out renewal notices and interest forms). He also testified as to WesBanco's procedures in facilitating mergers with other banks, including auditing processes between the two entities to ensure

---

[7] *See* W. Va. Code § 31A-4-35 (2006) (discussed *infra* in greater detail).

[8] Ms. Miller's deposition testimony was read into the record at trial.

that the data balanced before, during, and after the merger. In that regard, he testified that WesBanco had not lost information pertaining to a single account during a merger in the nineteen years he had worked for the bank.

Ms. Miller was designated as WesBanco's corporate representative pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure, and testified on numerous topics, including the procedures for searching the bank's electronic systems for account records. She stated that, had the Ellifritz account been active as of the year 2000, it would have been incorporated into the electronic systems when WesBanco digitized its files. She further stated that she had personally redeemed certificates of deposit issued by Central National Bank during her tenure with WesBanco. Significantly, she conceded that Ms. Ellifritz's certificate of deposit constituted a contract containing terms and conditions both on the face and reverse of the certificate. She further conceded that those terms and conditions included that the certificate was "payable on the return of this certificate properly endorsed" and that payment would only be made to a co-depositor on a joint account, or to his or her survivor, upon presentation of the endorsed certificate. Notwithstanding the terms and conditions expressly set forth on the certificates, however, Ms. Miller testified that WesBanco's practice was to permit withdrawal of the money deposited without presentation of the certificate if one of the named depositors provided identification.

WesBanco first moved for judgment as a matter of law at the close of Ms. Ellifritz's case-in-chief. As noted *supra*, the circuit court granted in part but denied the motion as to the breach of contract claim.[9] At the close of all the evidence both WesBanco and Ms. Ellifritz moved for judgment as a matter of law on the breach of contract claim. Ms. Ellifritz argued that WesBanco presented no evidence that this account had been disbursed, so it was obligated to adhere to the terms of its contract and tender payment to her upon presentation of the endorsed certificate. WesBanco reiterated its argument that Ms. Ellifritz failed to establish the existence of a contractual relationship at the time she made her demand for payment in 2018, and that the absence of account records led to a presumption that this account had been disbursed and closed before digitization in 2000. In denying both motions,[10] the circuit court summarized the evidence presented and concluded that a jury could reasonably infer either that the absence of records indicated the account had been disbursed, or that the records had been either intentionally or negligently lost. The court thus determined that the evidence, and the differing inferences that could be drawn therefrom, compelled submission of this issue to a jury.

Thereafter the circuit court considered the jury charge, and WesBanco proposed two jury instructions[11] based on this Court's holding in *Peters v. Peters*, 191 W.

---

[9] At this stage, the punitive damages claim was also still viable.

[10] However, the circuit court partially granted WesBanco's motion with regard to the punitive damages claim. *See supra* note 6.

[11] The proposed instructions are set forth and discussed *infra* in greater detail.

8

Va. 56, 443 S.E.2d 213 (1994). The court declined to give the proposed instructions, determining that *Peters* was factually distinguishable (in *Peters* the bank had records demonstrating that the funds were disbursed to a co-depositor), and because WesBanco's designated corporate representative testified that the presentation clause contained in the certificate was a binding contractual term. The circuit court instructed the jury, and after deliberation the jury returned a verdict for Ms. Ellifritz. On March 3, 2021, the circuit court entered an order memorializing the verdict and awarding Ms. Ellifritz stipulated damages in the amount of $51,209.75, plus post-judgment interest and costs. WesBanco now appeals.

## II. STANDARD OF REVIEW

WesBanco's arguments require the application of different standards of review. First, WesBanco appeals the denial of its renewed motion for judgment as a matter of law. "[T]he standard for reviewing the circuit court's rulings on pre-verdict and post-verdict motions for judgment as a matter of law is identical." *Gillingham v. Stephenson*, 209 W. Va. 741, 745, 551 S.E.2d 663, 667 (2001). As we held in syllabus point 2 of *Fredeking v. Tyler*:

> When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998], it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence

9

> must be viewed in the light most favorable to the nonmoving
> party.

224 W. Va. 1, 680 S.E.2d 16 (2009).

Second, WesBanco argues that the circuit court erred in refusing to give two proposed jury instructions. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996); *accord* Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994) ("A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense."). Moreover,

> "[t]he formulation of jury instructions is within the
> broad discretion of a circuit court, and a circuit court's giving
> of an instruction is reviewed under an abuse of discretion
> standard. A verdict should not be disturbed based on the
> formulation of the language of the jury instructions so long as
> the instructions given as a whole are accurate and fair to both
> parties." Syllabus Point 6, *Tennant v. Marion Health Care*
> *Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

Syl. Pt. 3, *Keesee v. Gen. Refuse Serv., Inc.*, 216 W. Va. 199, 604 S.E.2d 449 (2004). With these standards in mind, we now proceed to address the parties' arguments on appeal.

10

## III. ANALYSIS

### A.      *Burden of Proving Existence of Contract*

We begin with WesBanco's argument that the circuit court erred in denying its motion for judgment as a matter of law on Ms. Ellifritz's breach of contract claim. This argument is multifaceted. WesBanco argues that the circuit court required it to prove that the contract *did not* exist, thereby improperly shifting the burden of proof. WesBanco also urges this Court to hold as a matter of law that, given statutory authority for the destruction of bank records after the passage of a specified period of time, the absence of records of a bank account creates a presumption that the account has closed. We reject both contentions.

The crux of the burden-shifting argument is WesBanco's contention that the circuit court allegedly required it to prove a nullity: that this certificate of deposit account had closed prior to 2000 and thus no longer existed at the time of Ms. Ellifritz's demand for payment in 2018.

In reviewing an order denying a motion for judgment as a matter of law, this Court does not reweigh the evidence presented. Rather, our task is to examine whether that evidence was sufficient "such that a reasonable trier of fact might have reached the decision below." *Fredeking*, 224 W. Va. at 1, 680 S.E.2d at 17, syl. pt. 2. We have no trouble concluding that the evidence presented was sufficient to overcome WesBanco's motion for judgment as a matter of law on Ms. Ellifritz's breach of contract claim. The

11

facts are clear that Ms. Ellifritz established the initial existence of this contract by presenting the original certificate of deposit; indeed, WesBanco conceded that point—its corporate representative testified that the writing on the CD constituted a contract. Thus, the only issue was whether that contractual relationship still existed in 2018. The parties submitted competing evidence on that point, and the circuit court found that the absence of account records in this case, while *probative* on the issue of whether the contractual relationship still existed, was not *dispositive* of that issue. Simply put, the burden remained on Ms. Ellifritz to establish the continued existence of the contract, leaving WesBanco to convince the jury that Ms. Ellifritz had not met that burden. No burden was shifted; rather, the jury was left to weigh the conflicting evidence and determine whether Ms. Ellifritz had proved the continued existence of the contract.

WesBanco argues that the absence of account records should give rise to a presumption that the account has been closed, i.e., that the funds were disbursed, based on language found in provisions of the West Virginia Code governing the retention of banking records. Specifically, WesBanco directs this Court to West Virginia Code section 31A-4-35(a) (2006),[12] which provides that a bank may destroy records of closed accounts five

---

[12] West Virginia Code section 31A-4-35(a) provides, in pertinent part: "[E]very banking institution shall retain either the originals or such copies or reproductions of its records of final entry . . . for a period of at least five years from the date of the last entry on such books or the date of making of such deposit tickets and card records[.]"

Wesbanco highlights the fact that this statute was amended after the inception of these proceedings to provide that "any action. . .against a bank for any balance, amount, or proceeds from any time, savings or demand deposit account based on the contents of

12

years after the final entry on the account (meaning the date the account closed).[13]  Relying

on caselaw from New York, discussed *infra*, WesBanco contends that the fact that there

are no records of the Ellifritz account mandates a presumption that the account was closed

before the bank digitized its records (which records ostensibly reflect all accounts open as

of and since 2000 or closed thereafter).


In *Krawitt v. Keybank*, 871 N.Y.S.2d 842, 844 (N.Y. Sup. Ct. 2008), the court

noted that New York has "a legal presumption of payment after the lapse of twenty years

between the right to enforce an obligation and an attempt to do so."  As a preliminary

---

records for which a period of retention or preservation is set forth. . .must be brought during the retention or preservation period."  *Id*. § 31A-4-35(c) (eff. June 5, 2020).  The amendment is not applicable to this case, so we refrain from addressing what, if any, impact it would have on matters such as the one before this Court.

Further, insofar as WesBanco's arguments pertaining to the statutorily permissible destruction of banking records may be construed as an argument that the trial court erred in failing to instruct the jury on the law surrounding such record destruction, this Court can afford WesBanco no relief.  The record makes clear that WesBanco never requested an instruction from the circuit court in this regard.  *See* Syl. Pt. 1, *McAllister v. Weirton Hosp. Co*., 173 W. Va. 75, 312 S.E.2d 738 (1983) ("A verdict will not be disturbed for want of a proper instruction, unless it was requested and refused ….") (internal citation omitted).

[13] WesBanco also directs this Court to provisions of the West Virginia Uniform Unclaimed Property Act, W. Va. Code §§ 36-8-1 to -33 (2011), to support its position that the statutory scheme creates an implicit presumption of payment.  Specifically, West Virginia Code section 36-8-2(a)(5) provides that automatically renewing, interest bearing time deposit accounts such as the account at issue here are presumed abandoned "seven years after the earlier of the maturity date or the date of the last indication by the owner of interest in the property."  After the requisite period of time elapses, the bank transmits the account to the State Treasurer as unclaimed property and must keep records of that transmission for a minimum of ten years.  *Id*. § 36-8-21.  The parties agree that the account at issue in this case did not escheat to the State, so these provisions are inapplicable.

13

matter, New York has recognized such a presumption for well over a century. *See, e.g.*, *Bean v. Tonnele*, 94 N.Y. 381 (1884). West Virginia has no such presumption; for this Court to create one would be a dramatic deviation from our long-established law. And critically, even under New York law the precise factual scenario presented in this appeal— a depositor has the original certificate of deposit and demands payment, but the bank denies the existence of that account by citing the absence of records—has been found to create a genuine issue of material fact for a jury to resolve. *See Katzman v. Citibank*, 298 Fed. Appx. 81 (2d Cir. 2008).

The facts presented in *Katzman* are strikingly similar to the facts in this case. Eva Katzman, a widow, presented her local Citibank branch with a twenty-year-old certificate of deposit issued to her late husband. *Id*. at 82. One of the terms and conditions on the certificate stated that the certificate must be surrendered to withdraw the funds. *Id*. Citibank found no record of the account and refused to tender payment to Ms. Katzman. *Id*. When Ms. Katzman later sued for breach of contract, Citibank argued that its policies permitted it to pay out the funds of an account without the surrender of the certificate, and that the absence of records of the account indicated it must have done so. *Id*. at 82-83. The District Court for the Northern District of New York granted summary judgment for Citibank, relying on New York's presumption of payment law, but the United States Court of Appeals for the Second Circuit reversed, finding that Citibank's evidence of its policy regarding payment without surrender of the certificate was contradicted by the plain language on the certificate requiring its presentation to effectuate withdrawal, and that the

district court improperly drew an inference of payment in favor of Citibank. *Id*. at 84. In so doing, the court stated:

> Although Katzman's only record evidence was, in essence, the [certificate] itself, it was Citibank's burden to demonstrate that no genuine issues of material fact existed with respect to that [certificate], the authenticity of which does not appear to be disputed by Citibank. In light of the [certificate]'s express language that the [certificate] had to be surrendered to Citibank in order to withdraw the entire balance, Citibank's statement that "[s]uch was not necessarily the case" does not establish conclusively that the relevant account had been paid out; rather, it creates a genuine issue of material fact entitling Katzman to have a jury decide how much weight, if any, to give to that evidence and what inferences, if any, to draw from that evidence at trial.

*Id*. at 84.

Similarly, a sister state has found, also on facts virtually identical to those in this case, that a motion for judgment as a matter of law was improperly granted because factual issues remained for determination by a jury. *See Estate of English v. Regions Bank*, 184 So.3d 983 (Miss. Ct. App. 2015). In that case Audie Belle English presented to Regions Bank an original certificate of deposit issued to her as a co-depositor some twenty years prior and demanded payment. *Id*. at 984. Regions Bank denied payment on the ground that it could not identify any records of the account other than the original certificate Ms. English presented. *Id*. In the ensuing breach of contract action Regions Bank moved for judgment as a matter of law, arguing that the lack of records established that the account must have been paid out prior to the demand for payment. *Id*. A Mississippi Chancery Court found New York's presumption of payment law persuasive and granted the motion,

15

but the Mississippi Court of Appeals reversed, finding that Mississippi did not have a longstanding recognition of a presumption of payment, and stating that

> we find [the bank's] failure to furnish any direct evidence as to where the proceeds went and who had received them, combined with the evidence that Audie Belle had never surrendered the original [certificate], created a genuine issue of material fact for the chancery court to consider and was not an issue that entitled [the bank] to a judgment as a matter of law.

*Id*. at 987.

We agree with the reasoning of *Katzman* and *Estate of English* and conclude that under the facts and circumstances of this case, WesBanco's motion for judgment as a matter of law was properly denied. There is no presumption of payment in either West Virginia's statutes or our caselaw, and we decline to adopt one. Moreover, the dueling evidence on the contract claim—Ms. Ellifritz's presentation of the original certificate and WesBanco's proffer that it has no records of the account—created a question of fact for a jury to resolve. The jury determined that Ms. Ellifritz had proved her case by a preponderance of the evidence, and there is no legal or factual basis for this Court to disturb the jury's verdict.

## B.     The *Peters* Instructions

WesBanco also argues that the circuit court erred in refusing to deliver two proposed jury instructions. The instructions in question state:

> Proposed Instruction #2: Plaintiff contends that the Certificate of Deposit indicates that neither she nor her father could withdraw the funds from the account without first endorsing

16

and surrendering the Certificate of Deposit to the bank. Under West Virginia law, these types of surrender provisions are nothing more than general statements of bank policy. As such, they create no substantive rights in depositors like the plaintiff and her father.

Proposed Instruction #3: Furthermore, the provision in the Certificate of Deposit indicates that neither the plaintiff nor her father could withdraw the funds from the account without first endorsing and surrendering the Certificates of Deposit to the bank does not constitute or create a contractual duty on the part of the bank.

These instructions are drawn from this Court's holding in syllabus point four of *Peters*[14]

which states:

> The rules of a bank voluntarily adopted by it become a valid agreement or contract between the bank and its depositors when an account is opened and the passbook is issued or a certificate of deposit purchased pursuant to the printed rules set forth in the passbook or certificates. However, mere boilerplate recitals of the obligation to present passbooks or surrender endorsed certificates at the time of withdrawal constitute nothing more than general statements of bank policy and as such create no substantive rights in depositors. Thus, when the terms relating to the requirement of presentation of a passbook or certificate are positioned or articulated in such a

---

[14] *Peters* also involved a presentation clause issue, although on a passbook savings account rather than a money market certificate of deposit. *Peters*, 191 W. Va. at 58, 443 S.E.2d at 215. Patricia L. Peters alleged that Whitesville State Bank improperly disbursed to her husband, John Peters, the proceeds of a joint passbook savings account. After her husband's death Ms. Peters attempted to withdraw the funds from the account and presented the passbook which read, in pertinent part, "NO PAYMENTS WILL BE MADE EXCEPT UPON PRESENTATION OF THIS BOOK." *Id*. at 58-59, 443 S.E.2d at 215-16. The bank denied payment upon determining that it had already disbursed the funds to Mr. Peters some months prior. Ms. Peters then filed suit against the bank alleging breach of contract insofar as the bank was not permitted to pay the funds from the account without presentation of the passbook. *Id*. The circuit court found that the bank was relieved of liability insofar as it could show it disbursed the funds to a co-depositor, and this Court agreed. *Id*.

17

> way as to make it evident that a Bank does not intend the terms to be binding, no contract exists as to those terms.

191 W. Va. at 58, 443 S.E.2d at 215, syl. pt. 4.[15]

The circuit court declined to give these instructions for two reasons. First, the circuit court found the two cases were factually distinguishable insofar as the bank in *Peters* produced affirmative proof that it had disbursed the funds at issue to a co-depositor, while WesBanco acknowledged throughout the proceedings that it had no such proof. Moreover, WesBanco was unable to articulate how, if at all, *Peters* was factually on point; WesBanco merely reiterated its argument that syllabus point four provides that the presentation clause is not a contractual term. Such an argument is unavailing in the face of WesBanco's uncontroverted concession that *this* presentation clause is a binding contractual term. The circuit court did not err in finding *Peters* factually distinguishable.

Second, the court found that WesBanco's concession that the presentation clause on this certificate was a binding contractual term rendered the *Peters* instructions

---

[15] We decline the invitation to revisit the the law enunciated by the Court in this syllabus point. WesBanco contends that syllabus point four establishes that presentation clauses simply are not binding terms of a contract between a bank and a depositor. Ms. Ellifritz posits that the plain language of that syllabus point contradicts that assertion insofar as it states that "when [presentation clauses]. . .are positioned or articulated in such a way as to make it evident that a Bank does not intend the terms to be binding, no contract exists as to those terms." *Id*. at 58, 443 S.E.2d at 215, syl. pt. 4. The circuit court did not resolve this question because it found *Peters* to be both factually distinguishable and inapplicable to the case at bar, given WesBanco's concession that the presentation clause was a binding contractual term. Accordingly, because this issue is not squarely before us, we leave any further examination of *Peters* for another day.

18

inappropriate.  We agree.  WesBanco argues that the *Peters* instructions would have allowed the jury to find that the presentation clause was not a binding contractual term.  However, the evidence did not support such instructions. WesBanco's corporate witness gave uncontradicted testimony that the certificate of deposit was a contract, that the contract had terms and conditions, and that the presentation clause at issue was one of those terms and conditions.  WesBanco presented no contradictory evidence.  "An instruction should not be given when there is no evidence tending to prove the theory upon which the instruction is based."  Syl. Pt. 4, *Maples v. W. Va. Dep't of Com.*, 197 W. Va. 318, 475 S.E.2d 410 (1996) (internal citations omitted).  In short, because WesBanco admitted that the presentation clause was a binding contractual term, instructions predicated on syllabus point four of *Peters* were properly refused.

The factual distinctions between *Peters* and this case, coupled with WesBanco's concession as to the contractual nature of the presentation clause lead us to conclude that the circuit court did not abuse its discretion in refusing WesBanco's two requested jury instructions.

### C.     *Statutes of Limitation*

Finally, WesBanco argues that Ms. Ellifritz's claim for relief was barred by the operation of two different statutes of limitation, specifically those set forth in West Virginia Code section 55-2-6 (2016) and section 46-3-118(b) (2007).  We readily dispose

19

of WesBanco's argument with regard to section 55-2-6,[16] as a review of the record indicates that WesBanco did not raise this argument below. "This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court." Syl. Pt. 3, *Dean v. W. Va. Dep't of Motor Vehicles*, 195 W. Va. 70, 464 S.E.2d 589 (1995) (internal citation omitted). Accordingly, we will not address this argument.

With respect to WesBanco's argument as to section 46-3-118(b), we conclude that this provision is inapplicable to the matter at hand. That Code section provides:

> Except as provided in subsection (d) or (e), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years.

*Id*. In its argument, WesBanco relies wholly on the final sentence of the provision, stating that there is no evidence any interest had been paid on the Ellifritz account since at least 2000, when the account ceased to exist in WesBanco's system. However, WesBanco ignores the first part of that provision, which removes from its operation the scenarios "provided in subsection (d) or (e)." *Id*. In that regard, West Virginia Code section 46-3-118(e) clearly applies to the situation at hand:

---

[16] West Virginia Code section 55-2-6 provides that actions to recover on the breach of a written and signed contract shall be brought within ten years "after the right to bring the same shall have accrued."

20

> An action to enforce the obligation of a party to a certificate of deposit to pay the instrument must be commenced *within six years after demand for payment is made* to the maker, but if the instrument states a due date and the maker is not required to pay before that date, the six-year period begins when a demand for payment is in effect and the due date has passed.

(Emphasis added). These provisions are clear and unambiguous. The six-year statute of limitations on a demand for enforcement of payment on a certificate of deposit is triggered when a demand for payment is made, with one proviso: if the certificate states a due date, the due date must have passed prior to the demand for payment. In the instant case, Ms. Ellifritz's certificate states a due date of July 1, 1981, which due date had passed prior to her demand for payment in December 2018. Pursuant to the statute, therefore, the six-year statute of limitations began to run at the time of her demand for payment in December 2018, and Ms. Ellifritz's lawsuit, which was filed approximately four months later in April 2019, was timely. WesBanco's argument that West Virginia Code section 46-3-118(b) barred the suit is without merit.

## IV.  CONCLUSION

For the reasons set forth herein, this Court affirms the Circuit Court of Monongalia County's March 3, 2021, Judgment Order on Jury Trial.

Affirmed.

21